**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FLEXICORPS, INC., | ) | |
| | ) | No. 08 C 2092 |
| Plaintiff, | ) | |
| | ) | Ruben Castillo |
| v. | ) | District Court Judge |
| STANDARD PARKING CORPORATION IL, | ) | |
| et al., | ) | Martin C. Ashman |
| | ) | Magistrate Judge |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT**

Defendants, Standard Parking Corporation IL and Standard Parking Corporation, by and through their attorneys, Richard G. Schultz and Steven H. Gistenson, submit this memorandum in support of "Defendants' Rule 12(b)(6) Motion To Dismiss Class Action Complaint" ("Motion"). A copy of Plaintiff's "Class Action Complaint" ("Complaint") is attached hereto as **Exhibit A**.

**I.    RELEVANT FACTS ALLEGED**

Plaintiff is an Illinois corporation (Ex. A, ¶18). Defendants operate parking facilities for the City of Chicago, and they accept credit cards or debit cards for the transaction of business (Ex. A, ¶¶19, 20).

Plaintiff alleges that it brings this action to secure redress for itself and others similarly situated for purported violations of the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA") (Ex. A, ¶1). Specifically, in paragraph 30 of its Complaint, Plaintiff asserts Defendants violated Section 1681c(g)(1) of the FACTA,[1] which provides:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5

---

[1] Plaintiff's allegation that it "brings this action against Defendants based on Defendants' violation of 15 U.S.C. §§1681*p* (FCRA)" (Ex. A, ¶15) (emphasis added) is a mistake. Section 1681p relates to jurisdiction and limitation of actions under the FCRA as opposed to setting forth any provisions that could be violated by a defendant.

digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale transaction. 15 U.S.C. §1681c(g)(1).

According to Plaintiff:

> 22.    On January 10, 2007, after FACTA's final truncation requirement went into effect, Plaintiff received from the Defendants a computer-generated credit card receipt displaying Plaintiff's credit card expiration date (Ex. A, ¶22).

Plaintiff fails to allege from which of the facilities that Defendants operate for the City of Chicago it received the receipt that is the subject of its claim.

Plaintiff does not allege any actual damages resulting from Defendants' supposed FACTA violations. Instead, alleging that Defendants acted "recklessly" (Ex. A, ¶¶13, 77), Plaintiff requests "statutory damages of $100 to $1000 per violation," citing Section "1681n(A)" of the FCRA (Ex. A, p. 15 and ¶78). Section 1681n(a)(1)(A), to which Plaintiff means to refer, provides:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –
>
> > (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 ... . 15 U.S.C. §1681n(a)(1)(A).

Plaintiff seeks to bring its action on behalf of a class which it defines, in pertinent part, as: "'All persons to whom Defendants provided an electronically-printed receipt at the point of a sale or transaction ... and which receipt displayed either (a) more than the last five digits of the purchaser's credit card or debit card number, or (b) the expiration date of the purchaser's credit or debit card, or (c) both'" (Ex. A, ¶¶23-24). Plaintiff alleges "class-wide statutory damages, attorneys' fees, costs, and such other relief as the Court deems proper, including punitive damages the evidence shows them appropriate [sic]" (Ex. A, ¶15).

## II.    ARGUMENT

The Complaint fails to state a claim upon which relief can be granted, and it should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). First, Plaintiff fails to allege Defendants violated Sections 1681c(g) and 1681n of the FACTA and the FCRA, as amended by the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act" or "Act"). A copy of the Clarification Act is attached hereto as **Exhibit B**.

Second, even if Plaintiff could or would allege a violation, Plaintiff is not a "consumer" as that term is expressly defined in the FCRA, and it is not entitled to seek to impose civil liability and damages for any such violation. Third, Plaintiff's allegations are otherwise insufficient to properly state a claim under the FACTA. Finally, Plaintiff fails to properly allege a violation of its privacy. We will address each of these arguments in turn.

### A.    Plaintiff Fails To Allege A Violation Of Section 1681c(g) And Section 1681n

#### 1.    Plaintiff's claim is dependent upon Section 1681n

The violation of Section 1681c(g) claimed by Plaintiff is necessarily dependent upon Plaintiff alleging a violation of Section 1681n of the FCRA. Civil liability for violations of the FACTA can only exist based on Sections 1681n or 1681o of the FCRA. Section 1681n imposes civil liability only where a defendant "*willfully* fails to comply" with Section 1681c(g). 15 U.S.C. §1681n (emphasis added). Section 1681o imposes civil liability only where a defendant "is *negligent* in failing to comply" with Section 1681c(g). 15 U.S.C. §1681o (emphasis added).

Pursuant to Section 1681o, a defendant may be liable only for "any *actual damages* sustained by the consumer ...." 15 U.S.C. §1681o (emphasis added). A review of the 78-paragraph Complaint establishes that there is not a single allegation stating or inferring that Plaintiff or any member of the putative class sustained any actual damages whatsoever. That is why Plaintiff seeks only statutory damages in this action. Statutory damages, however, are only recoverable under Section 1681n. Thus, Plaintiff can only state a claim if it alleges a violation under Section 1681n. Plaintiff does not allege any such violation.

#### 2.    Plaintiff fails to allege a violation under Section 1681n

To state a claim under Section 1681n, Plaintiff must allege that Defendants "*willfully* fail[ed] to comply" with the FACTA. 15 U.S.C. §1681n (emphasis added). The Complaint does not contain any allegations that Defendants acted willfully. Accordingly, the Complaint fails to state a claim, and it should be dismissed.

Initially, Plaintiff fails to allege anywhere in the Complaint that Defendants acted willfully. Rather, Plaintiff avers, in only conclusory fashion: "Defendants violated FACTA recklessly ..." (Ex. A, ¶13); and "Defendants recklessly disregarded FACTA's requirements ..." (Ex. A, ¶77) (*see also* Ex. A, ¶¶26(e), 27). On its face, therefore, the Complaint fails to state a claim upon which relief can be granted.

More fundamentally, Plaintiff *cannot* support a claim based on a violation of Sections 1681c(g) and 1681n because, as made clear by the Clarification Act, the allegations contained in the Complaint establish Defendants did not act willfully. The only specific allegation of Defendants' purported violation of the FACTA is in paragraph 22 of the Complaint:

> 22. On January 10, 2007, after FACTA's final truncation requirement went into effect, Plaintiff received from the Defendants a computer-generated credit card receipt *displaying Plaintiff's credit card expiration date* (Ex. A, ¶22) (emphasis added).

Pursuant to the Clarification Act, the allegation that a computer-generated credit card receipt displayed a credit card expiration date, without more, fails to state a claim under Sections 1681c(g) and 1681n.

In enacting the Clarification Act, Congress found several undesirable consequences of the FACTA:

> - "Almost immediately after the deadline for compliance [with the FACTA] passed, hundreds of lawsuits were filed alleging that failure to remove the expiration date was a willful violation of the [FCRA] even where the account number was properly truncated" Ex. B, P.L. 110-241, §2(a)(4);
>
> - "None of these lawsuits contained an allegation of harm to any consumer's identity" *Id.* at §2(a)(5);
>
> - "Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud" *Id.* at §2(a)(6); and
>
> - "Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit" *Id.* at §2(a)(5).

The stated purpose of the Clarification Act "is to ensure that consumers suffering from any *actual harm* to their credit or identity are protected while simultaneously *limiting abusive lawsuits* that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id.* at §2(b) (emphasis added). Therefore, pursuant to the Clarification Act, "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of [the Clarification Act] but otherwise complied with the requirements of section

[1681c(g)] for such receipt *shall **not** be in willful noncompliance with section [1681c(g)] by reason of printing such expiration date on the receipt*." *Id.* at §3(a) (emphasis added). The Clarification Act expressly applies to any pending action without regard to whether the action was brought before or after the enactment of the Act. *Id.* at §3(b).

The computer-generated receipt Plaintiff claims it received from Defendants on January 10, 2007 is alleged to have only displayed "Plaintiff's credit card *expiration date*" (Ex. A, ¶22) (emphasis added).[2] Plaintiff fails to allege that the receipt it received violated any other requirement imposed by the FACTA. Pursuant to the express provisions of the Clarification Act, Plaintiff fails to allege "willful noncompliance" with Section 1681c(g). Consequently, Plaintiff fails to state a claim for relief under Sections 1681c(g) and 1681n, and its Complaint should be dismissed.[3]

### B. Plaintiff Is Not A "Consumer" Who May Seek To Impose Civil Liability And Damages Under The FACTA Or The FCRA

Even if Plaintiff could properly allege a violation of Sections 1681c(g) and 1681n, Plaintiff is not entitled to seek to impose civil liability and damages for a violation of the FACTA. The civil liability available pursuant to Sections 1681n and 1681o of the FCRA are available only to a "consumer". Plaintiff is not a "consumer" as that term is expressly defined in the FCRA.

Section 1681n(a), upon which Plaintiff's action is based, provides in pertinent part:

---

[2] Plaintiff's various allegations that, in some other unspecified transactions, Defendants "printed more than the last five digits of the card number and the card's expiration date" (Ex. A, ¶2) and printed "more than the last five digits of the card numbers *or* ... print[ed] credit and debit card expiration dates on receipts provided to cardholders" (Ex. A, ¶13) (emphasis added) do not save the Complaint. The only transaction alleged specifically in which Plaintiff was involved is the transaction on January 10, 2007, where Plaintiff supposedly received a receipt displaying its credit card expiration date (Ex. A, ¶22). There is no allegation that Plaintiff received an electronically printed receipt from Defendants that printed more than the last five digits of Plaintiff's card number and, if so, which digits were printed.

[3] For purposes of this Motion, Defendants must respond to the allegations contained in the Complaint. As discussed above, these allegations affirmatively establish Plaintiff cannot properly allege a violation of Sections 1681c(g) and 1681n. Since filing its Complaint, Plaintiff served a document entitled "Plaintiff's Initial Disclosures Pursuant to Rule 26(a)(1)" ("Disclosure"). In its Disclosure, Plaintiff states "Jeff Kubas has discoverable information concerning Defendant's printing of Plaintiff's credit card expiration date and more than five (5) digits of his credit card number." To the extent that this statement is an allegation that a receipt Plaintiff received from Defendants displayed both the expiration date and more than the last five digits of the card number on Plaintiff's credit card, and it is not clear that it is, this new allegation is inconsistent with, and contradicted by, the allegation in paragraph 22 of the Complaint.

> Any person who willfully fails to comply with any requirement imposed under this title *with respect to any consumer* is liable *to that consumer* in an amount equal to the sum of –

>> (1)(A) any actual damages sustained by *the consumer* as a result of the failure or damages of not less than $100 and not more than $1,000 .... 15 U.S.C. §1681n(a)(1)(A) (emphasis added).

Similarly, Section 1681o, the FCRA's only other provision for the imposition of civil liability (where negligent noncompliance is alleged), is limited to liability to a "consumer". 15 U.S.C. §1681o. Finally, in the Clarification Act, Congress makes clear that the protection offered by the FACTA is provided only to "a consumer cardholder". (Ex. B, P.L. 110-241, §§2(b), 3(a)).

Section 1681a of the FCRA requires that the "[d]efinitions and rules of construction set forth in this section are applicable for the purposes of this subchapter." 15 U.S.C. §1681a(a). As to the term "consumer", Section 1681a explicitly provides:

> (a) The term "consumer" means *an individual*. 15 U.S.C. §1681a(c) (emphasis added).

The "consumer" as an individual is distinct under the FCRA from a corporation or some other entity, which falls only within the definition of a "person" for purposes of the FCRA. 15 U.S.C. §1681a(b) ("The term 'person' means any individual, partnership, *corporation*, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity") (emphasis added). Thus, Congress expressly provided that a corporation is not a "consumer" for purposes of the FCRA and the FACTA.

Plaintiff is an Illinois corporation (Ex. A, ¶18). It certainly is not an individual, and it cannot be a consumer for purposes of the FACTA or the FCRA. Because Plaintiff is not a "consumer" entitled to seek statutory or other damages under the civil liability provisions of the FCRA (Sections 1681n and 1681o), Plaintiff fails to state a claim upon which relief can be granted. Thus, the Complaint should be dismissed.[4]

---

[4] On May 30, 2008, Plaintiff sought to have this action reassigned by filing a "Motion For Reassignment Of Flexicorps, Inc. v. Standard Parking Corporation" ("Motion for Reassignment") in an action pending before the Honorable Rebecca R. Pallmeyer, captioned: *Ivanov v. Standard Parking Corp., et al.*, No. 07 C 5027 (Case No. 07 C 5027, Dkt. No. 90). In response to the Motion for Reassignment, Plaintiffs in the *Ivanov* action objected because Plaintiff is not a "consumer". Plaintiffs in the *Ivanov* action argued: "Flexicorps alleges that Defendant violated [§]1681n(a) of the FACTA. However, Flexicorps is a corporation, not an individual, and therefore is not a 'consumer' who can seek statutory damages under the FCRA" (Case No. 07 C 5027, Dkt. No. 93). On June 5, 2008, Judge Pallmeyer struck the Motion for Reassignment because Plaintiff did not appear in court for the motion (Case No. 07 C 5027, Dkt. No. 94).

**C.    Plaintiff's Allegations Are Otherwise Insufficient**

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), the Supreme Court held:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).  *Id*. at 1964-65 (internal quotation marks and citations omitted).

*See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Plaintiff's Complaint falls short of the standards articulated by the Court in *Bell Atlantic*.

Plaintiff fails to allege at which of the several facilities operated by Defendants for the City of Chicago it received the receipt that is the subject of this action.  This information is a basic fact that would inform Defendants of the nature of Plaintiff's claim sufficiently enough so that Defendants can investigate the claim and respond accordingly.    Without this basic information, Plaintiff fails to give Defendants fair notice of what its claim is and the grounds upon which it rests.

Also, as discussed above on pages 3 through 5, Plaintiff fails to state a claim under Sections 1681c(g) and 1681n.  Plaintiff fails to allege Defendants acted willfully, and the sole allegation that the credit card receipt Plaintiff received displayed the card expiration date does not support any claim that Defendants acted willfully. But Plaintiffs plead generally, apart from the receipt that Plaintiff claims to have received, that Defendants "printed more than the last five digits of the card number ..." (Ex. A, ¶¶2, 13).  Plaintiff does not reveal in any manner which of the "more than the last five digits" Defendants are alleged to have printed.

If Plaintiff were to allege a violation of the FACTA because Defendants printed "more than the last five digits of [Plaintiff's] card number" on a computer-generated receipt Plaintiff received (and Plaintiff does not allege this), there may be other grounds for dismissal.  Section 1681c(g)(1) provides "no person that accepts credit cards or debit cards ... shall print more than the ***last 5 digits*** of the card number ...."  15 U.S.C. §1681c(g)(1) (emphasis added).  On its face, a provision that "no person ... shall print more than ***the last 5 digits*** of the card number ..." does

not prohibit printing the *first* digit, or the *first* few digits, of a card number. A claim to the contrary is not supported by the language of the statute.[5]

Indeed, at best, such a claim would create an ambiguity as to whether Section 1681c(g) prohibits printing the first digit, or the first few digits, of a credit card number (e.g. to identify what type of credit card is used). Section 1681c(g) is a vague and ambiguous statute to this extent; and, as a matter of law, Defendants cannot willfully violate such a statute because its obligations under the statute are uncertain. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *U.S. v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974).

Plaintiff must allege which digits of its card number Defendants allegedly printed and from what facility Plaintiff received the receipt that is the subject of its claim. Without these allegations, Defendants do not have fair notice of the claim against them and the grounds upon which it rests. Therefore, the Complaint fails to state a claim upon which relief can be granted, and it should be dismissed.

### D. Plaintiff's Privacy Claim Similarly Fails

Plaintiff avers "Defendants invaded the privacy of Plaintiff and the other class members," and it argues that the "FACTA creates a statutory right of privacy" (Ex. A, ¶¶14, 75). Beyond mere speculation, Plaintiff fails to allege any facts to support a claim that Defendants gave publicity to Plaintiff's private information (Ex. A, ¶76) ("Defendants made known to its [sic] staff and *possibly* others Plaintiff's private credit card information ...") (emphasis added). Under any circumstances, any right of privacy arising from the provisions of the FACTA afford Plaintiff no basis to assert a claim because, for all of the reasons stated above, Plaintiff fails to state any claim for relief under the FACTA or the FCRA.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion, dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6), and grant such further relief as this Court deems just and appropriate.

---

[5] Nor is a claim based on printing of the first digit or the first few digits of a card number supported by the purpose of the FACTA as clearly stated in the Clarification Act. Just as printing the expiration date does not expose consumers to any risk of fraud or identity theft, printing the first few digits of a credit or debit card number, without printing more than the *last* five digits, does not create such exposure. An action based on such a claim would represent one of the "abusive lawsuits that do not protect consumers ..." to which Congress referred with disapproval in the Clarification Act (Ex. B, P.L. 110-241, §2(b)).

Dated: June 9, 2008

Respectfully submitted,

STANDARD    PARKING    CORPORATION    IL    and
STANDARD PARKING CORPORATION,


_____ s/Steven H. Gistenson _____

Richard G. Schultz (2515830)
Steven H. Gistenson (6192212)
Schwartz Cooper Chartered
180 N. LaSalle St., Suite 2700
Chicago, IL 60601
312-346-1300 (telephone)
312-782-8416 (facsimile)



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| FLEXICORPS, INC., an Illinois corporation,  individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |
| STANDARD PARKING CORPORATION IL, STANDARD PARKING CORPORATION, and DOES 1-10, | ) ) ) ) |

```
FILED
APRIL 11, 2008          YM
08CV2092
JUDGE CASTILLO
MAGISTRATE JUDGE ASHMAN
```

Defendants.

### CLASS ACTION COMPLAINT

1.      Plaintiff, FLEXICORPS, INC. ("Plaintiff") brings this action to secure redress for itself and others similarly situated for violations by STANDARD PARKING CORPORATION IL and STANDARD PARKING CORPORATION, ("Defendants") and Does 1-10, of the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.      Specifically, Plaintiff alleges that, on credit or debit card receipts provided at the point of sale or transaction, Defendants printed more than the last five digits of the card number and the card's expiration date.

3.      One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

4.      This "truncation requirement" is designed to prevent identity theft.

5.      The Federal Trade Commission has estimated that, each year, criminals

fraudulently assume the identities of more than 9 million persons for financial gain, causing

losses in excess of $50 billion.

6.     Identity thieves obtain credit card receipts that are stolen, lost, or discarded and

then use the information on them to engage in transactions.  These identity thieves are commonly

referred to as "carders" or "dumpster divers."  This "low tech" method is more prevalent than the

use of sophisticated electronic wizardry to obtain the information.  *See e.g.*, Robin Sidel,

"Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's

Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

7.     Sophisticated identity thieves can replicate a credit card number using the

expiration date and the last four digits of the card number.

8.     The expiration date is generally necessary for misuse of the card number.

9.     Merchants generally will not honor a credit card in a "card-not-present"

transaction (telephone or Internet or fax) without both the correct expiration date and the card

number.  Thieves prefer these card-not-present transactions to reduce their chances of

apprehension.

10.    To curb this means of identity theft, FACTA prohibits merchants who accept

credit cards and debit cards from issuing electronically-generated receipts displaying either the

expiration date or more than the last five digits of the card number.

11.    The Fair and Accurate Transactions Act of 2003 was enacted on December 4,

2003.  FACTA is part of the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. §§ 1681 *et seq*, and

gave merchants who accept credit or debit cards up to three years to comply with the truncation

requirements.  15 U.S.C. §§ 1681c(g)(3)(A)-(B).  FACTA required full compliance with its

provisions no later than December 4, 2006 for all machines in use and in all transactions.  15

2

U.S.C. §1681c(g)(3)(A).

12.    FACTA provided two compliance deadlines: (1) Machines brought into use before January 1, 2005, must have been brought into full compliance before December 4, 2006; and (2) machines first used after January 1, 2005 were required to fully comply immediately.

13.    Here, Plaintiff alleges that Defendants violated FACTA by failing to comply with the truncation requirement; specifically by printing more than the last five digits of the card numbers or by printing credit and debit card expiration dates on receipts provided to cardholders. Furthermore, Plaintiff alleges that Defendants violated FACTA recklessly by failing to protect Plaintiff (and a class of others similarly situated) against identity theft and credit or debit card fraud.

14.    Defendants invaded the privacy of Plaintiff and the other class members by printing their protected, private information on receipts and permitting Defendants' employees access to that private information.

15.    Plaintiff brings this action against Defendants based on Defendants' violation of 15 U.S.C. §§1681p *et seq*. Plaintiff seeks class-wide statutory damages, attorneys' fees, costs, and such other relief as the Court deems proper, including punitive damages the evidence shows them appropriate.

### JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. §§1681p (FCRA).

17.    Venue in this district is proper because Defendants due business here.

### PARTIES

18.    Plaintiff FLEXICORPS, INC. is an Illinois corporation.

19.    STANDARD PARKING CORPORATION IL and STANDARD PARKING

CORPORATION are Illinois corporations that operate parking facilities for the City of Chicago,

20.    Defendants are "persons that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

21.    Defendants Does 1-10 are individual officers, directors, employees and agents of Defendants who authorized, directed, or participated in the violations of law complained of.

## FACTS

22.    On January 10, 2007, after FACTA's final truncation requirement went into effect, Plaintiff received from the Defendants a computer-generated credit card receipt displaying Plaintiff's credit card expiration date.

## CLASS ALLEGATIONS

23.    Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P.23(a) and (b)(3).'[

24.    The class is defined as: "All persons to whom Defendants provided an electronically-printed receipt at the point of a sale or transaction after the applicable statutory deadline (after December 4, 2006 for machines in use before January 1, 2005 or immediately for machines first used after January 1, 2005) and which receipt displayed either (a) more than the last five digits of the purchaser's credit card or debit card number, or (b) the expiration date of the purchaser's credit card or debit card, or (c) both.[1]

25.    The class is so numerous that joinder of all individual members in one action would be impracticable.  The proposed class includes more than 100 persons.

---

[1]    Excluded from the Class are Defendants' officers and directors, Plaintiff's counsel, and any Judge or Justice presiding over this action.

4

26.    Common questions of law or fact apply to the claims of all class members and those common questions predominate over questions affecting only individual members. The common questions include the following:

    a.    Whether Defendants printed sales or transaction receipts truncated credit or debit card numbers and credit or debit card expiration dates as FACTA required;

    b.    When Defendants put its credit and debit card machines into service;

    c.    Whether Defendants had a practice of providing customers sales or transaction receipts that failed to comply with FACTA's truncation requirement;

    d.    Whether Defendants violated FACTA;

    e.    Whether Defendants' conduct was reckless;

    f.    What amount of statutory damages the Court should order Defendants to pay; and

    g.    Identification and involvement of the Doe Defendants.

27.    Plaintiff's claims are typical of the claims of the other class members. Every class member's claims are based on the same legal theories and arise from the same unlawful and reckless conduct.

28.    Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

29.    A class action is superior method to other available means for the fair and efficient adjudication of the claims of class members. Individual actions are economically unfeasible and impractical.

**VIOLATION ALLEGED**

30.    Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

...no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

31.    With respect to machines first placed into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

32.    With respect to machines in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(A) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

33.    Defendants accept credit cards or debit cards in the course of transacting business with persons such as Plaintiff and the other class members. In transacting such business, Defendants uses cash registers or other machines or devices that electronically print receipts for credit and debit card transactions.

34.    After the effective date of FACTA, Defendants, at the point of sale or transaction, provided Plaintiff and each class member with one or more electronically-printed receipts. On each of those receipts, Defendants failed to comply with the truncation requirement.

35.    FACTA was enacted in 2003 and gave merchants who accept credit or debit cards up to three years to comply with its requirements, mandating compliance for all machines no later than December 4, 2006.

36.    Defendants knew or should have known of FACTA's truncation requirement.

37.    On information and belief, VISA, MasterCard, the PCI Security Standards Council—a consortium founded by VISA, MasterCard, Discover, American Express and JCB—companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed Defendants about FACTA, including its specific

6

requirements concerning the truncation of credit card and debit card numbers and prohibition on
the printing of expiration dates, and Defendants' need to comply with same.

38.    These requirements were widely publicized.

39.    For example, in response to earlier state legislation enacting a similar truncation
requirement, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I
am proud to announce an additional measure to combat identity theft and protect consumers.
Our new receipt truncation policy will soon limit cardholder information on receipts to the last
four digits of their accounts.  The card's expiration date will be eliminated from receipts
altogether.... The first phase of this new policy goes into effect July 1, 2003 for all new
terminals...." "Visa USA Announces Account Truncation Initiative to Protect Consumers from
ID Theft; Visa CEO Announces New Initiative at Press Conference with Sen. Dianne Feinstein,"
PR Newswire, March 6, 2003.

40.    Within 24 hours, MasterCard and American Express announced that they were
imposing similar requirements.

41.    The card issuing organizations started requiring compliance with FACTA by
contract, in advance of FACTA's mandatory compliance date.

42.    For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62),
distributed to and binding upon all merchants accepting Visa cards, expressly requires that "only
the last four digits of an account number should be printed on the customer's copy of the receipt"
and "the expiration date should not appear at all."  These statements were accompanied by a
picture of a receipt showing precisely what had to be removed and could not be printed on
receipts.  VISA required complete compliance by July 1, 2006, five months ahead of the
statutory deadline.

43.     Defendants accept Visa cards and are parties to a contract requiring compliance with the above-quoted requirement.

44.     These requirements were widely publicized.  The following are illustrative.

45.     On July 9, 2003, L. Richard Fischer of VISA USA presented a statement to the House Committee on Financial Services supporting the truncation requirements of what ultimately became FACTA.  Mr. Fischer stated:

> Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity.  For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit cards and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale.

46.     The Office of Thrift Supervision of the Treasury Department (the "OTS") is responsible for, *inter alia*, compliance with FACTA by federal savings banks.  Toward this end, the OTS publishes an Examination Handbook for OTS field personnel to use when they perform an examination, or compliance audit, of a given financial institution.  The February 2006 edition of the Handbook states:

**Truncation of Credit and Debit Card Account Numbers**

> Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

47.     Heartland Payment Systems, Inc. provides credit and debit card, payroll and related processing services to restaurant, hotel and retail merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants.  In 2003, Heartland broadly disseminated a pamphlet containing the following statement:

> Your credit card terminal is now – or will soon be required by law or the bankcard

8

associations to truncate – or limit – the information that can appear on electronically printed sales receipts.

What that means is that on all cardholder numbers:

- The expiration date must be eliminated

- All but the last four numbers of the card number must be obscured....

48.    In 2006, Heartland broadly disseminated a second pamphlet including the following statement:

**Make every transaction a safe one. \*\*\*\***

- The cardholder's receipt *should not include* the card's expiration date and *should only include* the last 4 or 5 digits of the card number. \*\*\*\*

49.    Commerce Bank, another credit card processor, sent "Merchant Compliance Awareness" notices to its customers during 2004. Those notices stated that all but the last four digits of the cardholder's account number and the entire expiration date must be suppressed from and not displayed on the receipt.

50.    Many restaurant and retail trade associations notified their merchant members of FACTA's truncation requirements, mirroring Visa's truncation requirements. For example, in its February/March 2005 Newsletter, the Virginia Retail Merchants Association reported that "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number or expiration date."

51.    In the April 23, 2003 edition of the monthly magazine for the National Association of Convenience Stores, an article titled "Visa USA Targets Identity Theft," appeared which included the following statement:

[A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. The policy will also eliminate the card's expiration date

from receipts altogether. Feinstein has introduced legislation to combat identity theft.

52.     The April 2005 edition of the Food Industry Advisor, the newsletter for the

Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council,

included an article regarding FACTA's truncation requirements and including the following

language:

> [A]ccording to the FACTA Act, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction....

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the

National Association of Convenience Stores.

53.     In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter

included an article regarding Requirements for Credit Card Truncation stating:

> [T]here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003.
>
> Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals....

54.     After FACTA's enactment, the Wisconsin Restaurant Association issued a

"Credit Card Transaction" Alert to its members, which stated:

> You may have been hearing about credit card truncation lately. This is what you need to know.
>
> Credit card truncation removes all but the last four (or five) digits of a credit card account number and the expiration date from the sales receipt. For example: A non-truncated receipt would list:
>
> > Acct. # 1234 5678 7654 3210 Exp. 10/05
>
> while a truncated receipt would show:

Acct. #: **** **** **** 3210 Exp **** ....

The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any person that accepts credit cards or debit cards from printing expiration date and more than the last five digits of the card number upon any terminal-generated receipt provided to the cardholder at the point of sale....

55.    An article appeared in the January 2005 edition of the Massachusetts Restaurant Association Newsletter notifying Association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

56.    Similar information was disseminated by the Ohio Restaurant Association, the Oklahoma Restaurant Association, and a significant number of other restaurant trade associations, and retail merchant trade associations.

57.    An article was published in the March/April 2006 Edition of the Ohio Independent Automobile Dealers' Association Dealer News Magazine entitled, "What You Should Know About Credit and Debit Card Procession and the FACTAs about Card Truncation." The article states:

What is Card Truncation?  This federal law sets deadlines by which the receipt electronically printed from a credit card sale must be truncated—meaning, the receipt given to the customer shows no more than the last five digits of the customer's credit card number and does not show the expiration date.

Business owners are responsible for merchant account compliance with the truncation regulations and must make sure their printed cardholder receipts do not contain expiration dates or full account numbers.

This same article appeared in the March/April edition of the West Coast Independent Automobile Dealer News.

58.    The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, the Fair and

Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." In relevant part, this
publication stated:

> Under the FACTA Act, businesses and others accepting credit or debit cards for
> payment may not print more than the last five digits of the card number nor may
> they print the expiration date upon any receipt provided to the cardholder at the
> point of sale.

59.     The November 18, 2004 edition of the Compliance Challenge, published by the
Credit Union National Association News, stated, "FACTA prohibits anyone that accepts
credit/debit cards to print more than the last 5 digits of the card number or expiration date on any
receipt at the point of sale or transaction...."

60.     Truncation standards, including the standards reflected in the Visa Merchant
Rules and in FACTA, permit the publication of the last four or five digits of customer account
numbers on the receipt presented to customers at the point of sale.  The publication of this
minimal amount of account information is sufficient to facilitate merchant account
reconciliation, processing of returns, etc.  In isolation, the publication of *only* the last four or five
digits of a customer account number significantly limits the extent to which a potential identity
thief can effectively use customer receipts disseminated at the point of sale to facilitate identity
theft.

61.     Publishing or making known expiration dates on customer receipts disseminated
at the point of sale, with the last four or five digits of the customer's account number,
exponentially increases the possibility of identity theft, which is the palpable reason that Visa,
and then Congress, required the truncation of expiration dates.

62.     Credit and debit card account numbers are not randomly generated.  Instead,
account numbers reflect an internal coding scheme set forth by the International Organization for
Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips.

12

Consistent with this standard, every credit card number consists of the following: (a) a single digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) a number unique to the card; and (d) a check digit.

63.    The MII identifies the industry of the issuer of the card.

64.    The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

65.    The seventh through next to the last digits, up to a maximum of 12 digits, are the numbers unique to the card.

66.    The last digit is a "check digit" that is not randomly assigned, but instead calculated by a defined algorithm.  Therefore, the "check digit" is derivative of the other numbers in the credit card number.

67.    Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

68.    Because an identity thief is able to decipher a credit card user's account number, the importance of truncating expiration dates becomes manifest.  That is, unlike the account number on the credit or debit card, the expiration date cannot be deciphered through sophisticated mathematical modeling.  Therefore, the expiration date is an important security check that corroborates that a person attempting to use a given account number is actually the authorized user of the card.

69.    Expiration dates also help confirm that a person making a purchase over the phone or on the internet possesses the card.

70.    Banks and credit card associations (*i.e.* Visa, MasterCard, American Express, etc.) are keenly aware of the importance of truncating expiration dates.

13

71.     An identity thief who acquires a receipt containing the last four or five digits of a credit card number **_and_** the card's expiration date can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential information.

72.     The FTC issued rules governing interpretation of the statute, including:

According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:

ACCT: ***********12345

EXP: ****

*See* Bureau of Consumer Protection, Federal Trade Commission, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007).

73.     The cost of truncating credit and debit account numbers (or expiration dates) is minimal.

74.     Most of Defendants' business peers and competitors brought their credit and debit card receipt printing processes into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendants could have done the same.

75.     FACTA creates a statutory right of privacy.

76.     Defendants made known to its staff and possibly others Plaintiff's private credit card information, violating Plaintiff's right of privacy. Stated differently, by publishing Plaintiff's private credit card information to Defendants' staff and possibly others, Defendants

violated Plaintiff's right of privacy. Defendants similarly violated the privacy rights of the other class members.

77.    Defendants recklessly disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA. 15 U.S.C. § 1681n.

78.    Therefore, Defendants are liable to Plaintiff and the other class members for, among other things, "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(A).

WHEREFORE, Plaintiff, FLEXICORPS, INC., demands judgment in favor of Plaintiff and the other class members and against Defendants as follows:

a.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

b.    For statutory damages of $100 to $1000 per violation;

c.    For attorney's fees, litigation expenses, and costs; and

d.    For such other and further relief as the Court may deem proper, including punitive damages if appropriate.

FLEXICORPS, INC, an Illinois corporation, individually and on behalf of all others similarly situated,

By: One of his attorneys

Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Telephone:  847/368-1500

Phillip A. Bock
BOCK & HATCH, LLC
134 N. LaSalle Street, Suite 1000
Chicago, IL  60602
Telephone:  312/658-5500

**B**

**LexisNexis®** *Total Research System*                    Switch Client ┊ Preferences ┊ Sign Off ┊ ? Help

Search ▏Research Tasks ▏Get a Document ▏*Shepard's*® ▏Alerts ▏Total Litigator ▏Transactional Advisor ▏Counsel Selector ▏Dossier ┊ History ┊ ⌂

Source: Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > USCS - Public Laws  ⓘ
Terms: 110-241 (Edit Search | Suggest Terms for My Search)

*110 P.L. 241, *; 122 Stat. 1565;*
*2008 Enacted H.R. 4008; 110 Enacted H.R. 4008*

Retrieve Legislative Impact® **($)**

UNITED STATES PUBLIC LAWS
110th Congress 2nd Session
(c) 2008, LEXIS-NEXIS, A DIVISION OF REED ELSEVIER INC. AND REED ELSEVIER PROPERTIES INC.

PUBLIC LAW **110-241** [H.R. 4008]
JUN. 03, 2008
CREDIT AND DEBIT CARD RECEIPT CLARIFICATION ACT OF 2007

110 P.L. 241; 122 Stat. 1565; 2008 Enacted H.R. 4008; 110 Enacted H.R. 4008

BILL TRACKING REPORT:        110 Bill Tracking H.R. 4008
FULL TEXT VERSION(S) OF BILL: 110 H.R. 4008

An Act

To amend the Fair Credit Reporting Act to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

**[*1]** SECTION 1. SHORT TITLE.

This Act may be cited as the "Credit and Debit Card Receipt Clarification Act of 2007".

**[*2]** SEC. 2. FINDINGS; PURPOSE.

(a) Findings.--The Congress finds as follows:

(1) The Fair and Accurate Credit Transactions Act (commonly referred to as "FACTA" ) was enacted into law in 2003 and 1 of the purposes of such Act is to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud.

(2) As part of that law, the Congress enacted a requirement, through an amendment to the Fair Credit Reporting Act, that no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the card holder at the point of the sale or transaction.

(3) Many merchants understood that this requirement would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of the law.

(4) Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated.

(5) None of these lawsuits contained an allegation of harm to any consumer's identity.

(6) Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.

(7) Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit.

(b) Purpose.--The purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

**[*3]** SEC. 3. CLARIFICATION OF WILLFUL NONCOMPLIANCE FOR ACTIONS BEFORE THE DATE OF THE ENACTMENT OF THIS ACT.

(a) In General.--Section 616 of the Fair Credit Reporting Act (15 U.S.C. 1681n) is amended by adding at the end the following new subsection:

"(d) Clarification of Willful Noncompliance.--For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt.".

(b) Scope of Application.--The amendment made by subsection (a) shall apply to any action, other than an action which has become final, that is brought for a violation of 605(g) of the Fair Credit Reporting Act to which such amendment applies without regard to whether such action is brought before or after the date of the enactment of this Act.

Speaker of the House of Representatives.
Vice President of the United States and President of the Senate.

Source:  Legal > Federal Legal - U.S. > United States Code Service (USCS) Materials > USCS - Public Laws ⓘ
 Terms:  110-241 (Edit Search | Suggest Terms for My Search)
  View:  Full
Date/Time:  Monday, June 9, 2008 - 2:25 PM EDT

⚫ LexisNexis®   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.