**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KUBAS**, | ) | |
| | ) | No. 08 C 2092 |
| Plaintiff, | ) | |
| | ) | The Honorable |
| v. | ) | Ruben Castillo |
| | ) | District Court Judge |
| **STANDARD PARKING** | ) | |
| **CORPORATION IL**, et al., | ) | The Honorable |
| | ) | Martin C. Ashman |
| Defendants. | ) | Magistrate Judge |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT**

Defendants, Standard Parking Corporation IL and Standard Parking Corporation, by and through their attorneys, Richard G. Schultz, Steven H. Gistenson and Jennifer Zlotow, submit this memorandum in support of "Defendants' Rule 12(b)(6) Motion To Dismiss First Amended Class Action Complaint" ("Motion"). A copy of Plaintiff's "First Amended Class Action Complaint" (Dkt. No. 34) ("Amended Complaint") is attached hereto as **Exhibit A**.

## I.    STATEMENT OF FACTS ALLEGED

Plaintiff's action is based on purported violations of the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA") (Ex. A, ¶1). In paragraph 28 of his Amended Complaint, Plaintiff asserts Defendants violated Section 1681c(g)(1) of the FACTA,[1] which provides:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction. 15 U.S.C. §1681c(g)(1).

While Plaintiff alleges in the current version of the Amended Complaint on file (Dkt. No. 34) that it is "an Illinois corporation" (Ex. A, ¶16), this must be in error. In a "Corrected Exhibit A

---

[1] In paragraph 13 of the Amended Complaint, Plaintiff mistakenly refers to a violation of 15 U.S.C. §1681*p*, which relates only to jurisdiction and limitation of actions.

to Motion for Leave to File Amended Complaint by Flexicorps, Inc.," Plaintiff is alleged to be "an Illinois resident" (Dkt. No. 32, ¶16).[2]

Plaintiff alleges: "On January 10, 2007, after FACTA's final truncation requirement went into effect, Plaintiff received from the Defendants a computer-generated credit card receipt displaying more than the last five digits of Plaintiff's credit card from the O'Hare parking facility" (Ex. A, ¶20).  In addition, Plaintiff alleges Defendants printed "the card's expiration date" (Ex. A, ¶2).[3]  There is no allegation of any actual harm or damages resulting from Defendants' supposed FACTA violations.  The Amended Complaint is replete with statements regarding identity theft, identity thieves and credit card fraud (Ex. A, ¶¶4-8, 11); however, there is no claim that Plaintiff's identity has been stolen or that Plaintiff has been the victim of credit card fraud as a result of the conduct alleged.

Plaintiff alleges Defendants acted "recklessly" (Ex. A, ¶¶11, 72); and he seeks "statutory damages of $100 to $1000 per violation," citing Section "1681n(A)" of the FCRA (Ex. A, ¶¶13, 72, 73 and p. 14).  Section 1681n(a)(1)(A), to which Plaintiff surely means to refer, provides:

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 … .  15 U.S.C. §1681n(a)(1)(A).

Plaintiff also seeks attorney's fees, litigation expenses, costs, and other relief, "including punitive damages if appropriate" (Ex. A, ¶13, pp. 14-15).

Plaintiff seeks to bring his action on behalf of a class which he defines, in pertinent part, as:

---

[2] In the event that Plaintiff is not an individual, Defendants seek leave to supplement this motion to dismiss on that basis as well.

[3] The printing of the expiration date on a credit or debit card is not a basis for a violation of FACTA, as made clear by the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act") (P.L. 110-241.  A copy of the Clarification Act is attached hereto as **Exhibit B**.  Referring to the "hundreds of lawsuits" being filed under FACTA alleging no "harm to any consumer's identity," Congress expressly stated the purpose of the Clarification Act "is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." Ex. B, P.L. 110-241 §2(a)(4) and (5) and §2(b).

"All consumers to whom Defendants provided an electronically-printed receipt at the point of a sale or transaction … and which receipt displayed more than the last five digits of the purchaser's credit card or debit card number" (Ex. A, ¶22).

Plaintiff seeks the identical relief on behalf of the purported class (Ex. A, ¶¶13, 73, p. 14).

## II.    ARGUMENT

The Amended Complaint fails to state a claim upon which relief can be granted, and it should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). First, Plaintiff fails to adequately allege Defendants violated Sections 1681c(g) and 1681n of the FACTA and the FCRA. Second, Defendants cannot willfully violate a statute that is vague and ambiguous, and Plaintiff's allegations are otherwise insufficient to state a claim. Finally, Plaintiff fails to state a claim based on any statutory right of privacy. We will address each of these arguments in turn.

### A.    Plaintiff Fails To Properly Allege A Violation Of Section 1681c(g) And Section 1681n

#### 1.    Plaintiff's claim is dependent upon Section 1681n

The violation of Section 1681c(g) claimed by Plaintiff is necessarily dependent upon Plaintiff alleging a violation of Section 1681n of the FCRA. Civil liability for violations of the FACTA only can exist based on Sections 1681n or 1681o of the FCRA. Section 1681n imposes civil liability only where a defendant "*willfully* fails to comply" with Section 1681c(g). 15 U.S.C. §1681n (emphasis added). Section 1681o imposes civil liability only where a defendant "is *negligent* in failing to comply" with Section 1681c(g). 15 U.S.C. §1681o (emphasis added).

Pursuant to Section 1681o, a defendant may be liable only for "any *actual damages* sustained by the consumer …." 15 U.S.C. §1681o (emphasis added). A review of the 73-paragraph Amended Complaint establishes that there is not a single allegation stating or inferring that Plaintiff or any member of the putative class sustained any actual damages or other harm whatsoever. That is why Plaintiff seeks only statutory damages in this action. Statutory damages, however, are only recoverable under Section 1681n. Thus, Plaintiff can only state a claim if he alleges a violation under Section 1681n. Plaintiff does not properly allege any such violation.

#### 2.    Plaintiff fails to properly allege a violation under Section 1681n

To state a claim under Section 1681n, Plaintiff must allege that Defendants "*willfully* fail[ed] to comply" with the FACTA. 15 U.S.C. §1681n (emphasis added). Plaintiff fails to

allege anywhere in the Amended Complaint that Defendants acted willfully.  Rather, Plaintiff avers, in only conclusory fashion: "Defendants violated FACTA recklessly …;" and "Defendants recklessly disregarded FACTA's requirements …" (Ex. A, ¶¶11, 72) (*see also* Ex. A, ¶¶24(e), 25).  Plaintiff's allegations are insufficient to properly state a claim.

In *Safeco Ins. Co. of America v. Burr*, ___ U.S. ___, 127 S.Ct. 2201 (2007), the Supreme Court considered to what extent "willfully fails to comply" under Section 1681n reaches reckless disregard of FCRA's obligations.  127 S.Ct. at 2208.  After finding the standard "willfully fails to comply" in Section 1681n(a) reaches reckless FCRA violations (*Id*. at 2209), the Court proceeded to define what must be pleaded and proved to demonstrate a reckless violation.  The Court ruled: "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, ***but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless***."  *Id*. at 2215 (emphasis added).  The *Safeco* Court referred to the Restatement (Second) of Torts §500, p. 587 (1963-1964), which describes recklessness as conduct that creates a risk "substantially greater than that which is necessary to make his conduct negligent."  127 S.Ct. at 2215.

Plaintiff's allegations that "Defendants violated FACTA recklessly …" and "Defendants recklessly disregarded FACTA's requirements …" (Ex. A, ¶¶11, 72) are rank conclusions.  These allegations provide no basis to conclude Defendants "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Id*.  Plaintiff's allegations do not distinguish his claim for statutory damages dependent upon a willful violation of the FACTA pursuant to Section 1681n from a claim requiring the existence of actual damages for a negligent violation of the FACTA under Section 1681o.

In *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007), the Supreme Court held:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests.  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ***a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do***.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in

fact).  *Id*. at 1964-65 (internal quotation marks and citations omitted, parentheses in original) (emphasis added).

*See also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  The Amended Complaint contains only conclusory allegations that Defendants acted recklessly. These allegations fall short of the standards for pleading articulated by the Court in *Bell Atlantic*.

Because the Amended Complaint does not contain sufficient allegations that Defendants acted willfully, Plaintiff fails to state a claim for relief under Sections 1681c(g) and 1681n. Thus, the Amended Complaint should be dismissed pursuant to Fed.R.Civ. P. 12(b)(6).

**B.**    **Defendants Cannot Willfully Violate A Vague And Ambiguous Statute, And Plaintiff's Allegations Are Otherwise Insufficient To State A Claim**

Section 1681c(g)(1) provides "no person that accepts credit cards or debit cards … shall print more than the ***last 5 digits*** of the card number …."  15 U.S.C. §1681c(g)(1) (emphasis added).  On its face, a provision that "no person … shall print more than ***the last 5 digits*** of the card number …" does not prohibit printing the ***first*** digit, or the ***first*** few digits, of a card number, as long as fewer than the last five digits are printed.  No claim to the contrary is supported by the plain language of the FACTA, nor is such a claim consistent with the purpose of the FACTA as articulated by Congress in the Clarification Act.

At best, a claim based on a receipt that does not print "more than the last 5 digits of the card number" creates an ambiguity as to whether Section 1681c(g) prohibits printing the first digit, or the first few digits, of a credit card number.  Section 1681c(g) is a vague and ambiguous statute to this extent.  As a matter of law, Defendants cannot willfully violate such a statute because their obligations under the statute are uncertain.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *U.S. v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974).

Plaintiff's allegations are insufficient because he merely alleges that he received from Defendants a "receipt displaying more than the last five digits of Plaintiff's credit card …" (Ex. A, ¶ 20).  Plaintiff does not reveal in any manner which of the "more than the last five digits" Defendants are alleged to have printed on the receipt.  It is significant for the purpose of alleging a violation of the FACTA which digits Plaintiff claims were printed on the receipt.

In enacting the Clarification Act, Congress found several undesirable consequences of the FACTA:

- "Almost immediately after the deadline for compliance [with the FACTA] passed, hundreds of lawsuits were filed alleging that failure to remove the expiration date was a willful violation of the [FCRA] even where the account number was properly truncated" Ex. B, P.L. 110-241, §2(a)(4);

- "***None of these lawsuits contained an allegation of harm*** to any consumer's identity" *Id*. at §2(a)(5) (emphasis added);

- "Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud" *Id*. at §2(a)(6); and

- "Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit" *Id*. at §2(a)(7).

The expressly stated purpose of the Clarification Act, and the FACTA, "is to ensure that consumers suffering from any ***actual harm*** to their credit or identity are protected while simultaneously ***limiting abusive lawsuits*** that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id*. at §2(b) (emphasis added).

Just as printing the expiration date does not expose consumers to any risk of fraud or identity theft, printing the first few digits of a credit or debit card number (e.g. to identify what type of credit card is used), without printing more than the ***last five digits***, cannot create such exposure. An action based on such a claim is representative of the "abusive lawsuits that do not protect consumers ..." of which Congress disapproved as stated in the Clarification Act (Ex. B, P.L. 110-241, §2(b)).

Defendants cannot willfully violate Sections 1681c(g) and 1681n because their obligations under these sections are vague and uncertain. Moreover, Plaintiff fails to allege which of the digits of his credit card were printed on the receipt he purportedly received from Defendants. For both of these reasons, the Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## C.    Plaintiff Has Failed To State A Claim Based On Any Statutory Right Of Privacy

Plaintiff avers "Defendants invaded the privacy of Plaintiff and the other class members" and "violat[ed] Plaintiff's right of privacy" by "permitting Defendants' employees access to

[Plaintiff's] private information" and "publishing Plaintiff's private credit card information to Defendants' staff and possibly others" (Ex. A, ¶¶12, 71). As a matter of law, Plaintiff does not cite, and Defendants have not found, any authority for the proposition that the "FACTA creates a statutory right of privacy" (Ex. A, ¶70). As a matter of fact, even if there were a statutory right of privacy, Plaintiff fails to allege any facts to support the mere conclusion that Defendants provided access to, or published, Plaintiff's private credit card information. Finally, any right of privacy arising from the provisions of the FACTA can provide Plaintiff no basis to assert a claim because, for all of the reasons stated in Arguments A and B above, Plaintiff fails to state any claim for relief under the FACTA or the FCRA.

Plaintiff's claims asserting a violation of Plaintiff's supposed right of privacy should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion, dismiss Plaintiff's Amended Complaint with prejudice pursuant to Fed.R.Civ.P. 12(b)(6), and grant such further relief as this Court deems just and appropriate.

Dated: August 20, 2008

Respectfully submitted,

**STANDARD PARKING CORPORATION IL** and **STANDARD PARKING CORPORATION**

By: _____ s/Steven H. Gistenson _____
One of their Attorneys

Richard G. Schultz (2515830)
Steven H. Gistenson (6192212)
Jennifer Zlotow (6280106)
Dykema Gossett PLLC
180 North LaSalle Street
Suite 2700
Chicago, Illinois 60601
312-627-4600 (telephone)
312-627-4601 (facsimile)

CHICAGO\2499139.1
ID\SHGI

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JEFFREY A. KUBAS, individually and as
the representative of a class of similarly-
situated persons,

                Plaintiff,

v.

STANDARD PARKING CORPORATION
IL, STANDARD PARKING CORPORA-
TION, and DOES 1 through 10,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 08 C 2092

Judge Castillo
Magistrate Ashman

# FILED

JUL 2 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### FIRST AMENDED CLASS ACTION COMPLAINT

1.     Plaintiff, JEFFREY A. KUBAS ("Plaintiff") brings this action to secure redress

for himself and others similarly situated for violations by STANDARD PARKING

CORPORATION IL and STANDARD PARKING CORPORATION, ("Defendants") and DOES

1 through 10, of the Fair and Accurate Transactions Act of 2003 ("FACTA") amendment to the

Fair Credit Reporting Act ("FCRA").

2.     Specifically, Plaintiff alleges that, on credit or debit card receipts provided at the

point of sale or transaction, Defendants printed more than the last five digits of the card number,

and the card's expiration.

3.     One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

> No person that accepts credit cards or debit cards for the
> transaction of business shall print more than the last five digits of
> the card number . . . upon any receipt provided to the cardholder at
> the point of sale or transaction.

4.     This "truncation requirement" is designed to prevent identity theft.

5.    The Federal Trade Commission has estimated that, each year, criminals fraudulently assume the identities of more than 9 million persons for financial gain, causing losses in excess of $50 billion.

6.    Identity thieves obtain credit card receipts that are stolen, lost, or discarded and then use the information on them to engage in transactions. These identity thieves are commonly referred to as "carders" or "dumpster divers." This "low tech" method is more prevalent than the use of sophisticated electronic wizardry to obtain the information. *See e.g.*, Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

7.    Sophisticated identity thieves can replicate a credit card number using the last four digits of the card number.

8.    To curb this means of identity theft, FACTA prohibits merchants who accept credit cards and debit cards from issuing electronically-generated receipts displaying more than the last five digits of the card number.

9.    The Fair and Accurate Transactions Act of 2003 was enacted on December 4, 2003. FACTA is part of the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. §§ 1681 *et seq*, and gave merchants who accept credit or debit cards up to three years to comply with the truncation requirements. 15 U.S.C. §§ 1681c(g)(3)(A)-(B). FACTA required full compliance with its provisions no later than December 4, 2006 for all machines in use and in all transactions. 15 U.S.C. § 1681c(g)(3)(A).

10.    FACTA provided two compliance deadlines: (1) Machines brought into use before January 1, 2005, must have been brought into full compliance before December 4, 2006; and (2) machines first used after January 1, 2005 were required to fully comply immediately.

2

11.    Here, Plaintiff alleges that Defendants violated FACTA by failing to comply with the truncation requirement; specifically by printing more than the last five digits of the card numbers on receipts provided to cardholders. Furthermore, Plaintiff alleges that Defendants violated FACTA recklessly by failing to protect Plaintiff (and a class of others similarly situated) against identity theft and credit or debit card fraud.

12.    Defendants invaded the privacy of Plaintiff and the other class members by printing their protected, private information on receipts and permitting Defendants' employees access to that private information.

13.    Plaintiff brings this action against Defendants based on Defendants' violation of 15 U.S.C. §§ 1681p *et seq.* Plaintiff seeks class-wide statutory damages, attorneys' fees, costs, and such other relief as the Court deems proper, including punitive damages the evidence shows them appropriate.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. §§ 1681p (FCRA).

15.    Venue in this district is proper because Defendants do business here.

## PARTIES

16.    Plaintiff, JEFFREY A. KUBAS, is an Illinois corporation.

17.    STANDARD PARKING CORPORATION IL and STANDARD PARKING CORPORATION are Illinois corporations that operate parking facilities for the City of Chicago,

18.    Defendants are "persons that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

3

19.     Defendants, DOES 1 through 10, are individual officers, directors, employees and agents of Defendants who authorized, directed, or participated in the violations of law complained of.

## FACTS

20.     On January 10, 2007, after FACTA's final truncation requirement went into effect, Plaintiff received from the Defendants a computer-generated credit card receipt displaying more than the last five digits of Plaintiff's credit card from the O'Hare parking facility. Plaintiff is a consumer because his name was on the credit card and his credit information was supplied to American Express and relied upon by American Express to issue the credit card.

## CLASS ALLEGATIONS

21.     Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

22.     The class is defined as: "All consumers to whom Defendants provided an electronically-printed receipt at the point of a sale or transaction after the applicable statutory deadline (after December 4, 2006 for machines in use before January 1, 2005 or immediately for machines first used after January 1, 2005) and which receipt displayed more than the last five digits of the purchaser's credit card or debit card number.[1]

23.     The class is so numerous that joinder of all individual members in one action would be impracticable. The proposed class includes more than 100 persons.

24.     Common questions of law or fact apply to the claims of all class members and those common questions predominate over questions affecting only individual members. The common questions include the following:

---

[1]     Excluded from the Class are Defendants' officers and directors, Plaintiff's counsel, and any Judge or Justice presiding over this action.

4

     (a)     Whether Defendants printed sales or transaction receipts truncated credit or debit card numbers as FACTA required;

     (b)     When Defendants put their credit and debit card machines into service;

     (c)     Whether Defendants had a practice of providing customers sales or transaction receipts that failed to comply with FACTA's truncation requirement;

     (d)     Whether Defendants violated FACTA;

     (e)     Whether Defendants' conduct was reckless;

     (f)     What amount of statutory damages the Court should order Defendants to pay; and

     (g)     Identification and involvement of the Doe Defendants.

25.     Plaintiff's claims are typical of the claims of the other class members. Every class member's claims are based on the same legal theories and arise from the same unlawful and reckless conduct.

26.     Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

27.     A class action is superior method to other available means for the fair and efficient adjudication of the claims of class members. Individual actions are economically unfeasible and impractical.

<b><u>VIOLATION ALLEGED</u></b>

28.     Defendants violated 15 U.S.C. § 1681c(g)(I), which provides that:

> . . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number . . . upon any receipt provided to the cardholder at the point of sale or transaction.

5

29.   With respect to machines first placed into use after January 1, 2005, 15 U.S.C.
§ 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1).

30.   With respect to machines in use before January 1, 2005, 15 U.S.C.
§ 1681c(g)(3)(A) required compliance with the provisions of 15 U.S.C. § 1681c(g)(1) on or after
December 4, 2006.

31.   Defendants accept credit cards or debit cards in the course of transacting business
with persons such as Plaintiff and the other class members.  In transacting such business,
Defendants uses cash registers or other machines or devices that electronically print receipts for
credit and debit card transactions.

32.   After the effective date of FACTA, Defendants, at the point of sale or transaction,
provided Plaintiff and each class member with one or more electronically-printed receipts.  On
each of those receipts, Defendants failed to comply with the truncation requirement.

33.   FACTA was enacted in 2003 and gave merchants who accept credit or debit cards
up to three years to comply with its requirements, mandating compliance for all machines no
later than December 4, 2006.

34.   Defendants knew or should have known of FACTA's truncation requirement.

35.   On information and belief, VISA, MasterCard, the PCI Security Standards
Council—a consortium founded by VISA, MasterCard, Discover, American Express and JCB—
companies that sell cash registers and other devices for the processing of credit or debit card
payments, and other entities informed Defendants about FACTA, including its specific
requirements concerning the truncation of credit card and debit card numbers and Defendants'
need to comply with same.

36.   These requirements were widely publicized.

6

37.    For example, in response to earlier state legislation enacting a similar truncation requirement, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. . . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference with Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

38.    Within 24 hours, MasterCard and American Express announced that they were imposing similar requirements.

39.    The card issuing organizations started requiring compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

40.    For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), distributed to and binding upon all merchants accepting Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt . . . . ." These statements were accompanied by a picture of a receipt showing precisely what had to be removed and could not be printed on receipts.  VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

41.    Defendants accept Visa cards and are parties to a contract requiring compliance with the above-quoted requirement.

42.    These requirements were widely publicized.  The following are illustrative.

7

43.     On July 9, 2003, L. Richard Fischer of VISA USA presented a statement to the

House Committee on Financial Services supporting the truncation requirements of what

ultimately became FACTA. Mr. Fischer stated:

> Although Visa generally believes that the details of preventing
> identity theft should be left to financial institutions that are best
> suited to address ever evolving fraud techniques, Title II could
> provide important benefits to consumers and financial institutions
> alike by establishing workable identity theft provisions and
> ensuring that these provisions benefit from national uniformity.
> For example, Section 203 of Title II would prohibit any merchant
> or other entity that accepts credit cards and debit cards from
> printing more than the last four digits of the card account number
> . . . . upon receipts provided to cardholders at the point of sale.

44.     The Office of Thrift Supervision of the Treasury Department (the "OTS") is

responsible for, *inter alia*, compliance with FACTA by federal savings banks. Toward this end,

the OTS publishes an Examination Handbook for OTS field personnel to use when they perform

an examination, or compliance audit, of a given financial institution. The February 2006 edition

of the Handbook states:

### Truncation of Credit and Debit Card Account Numbers

> Ensure that electronically generated receipts from ATM and POS
> terminals or other machines do not contain more than the last five
> digits of the card number . . . . .

45.     Heartland Payment Systems, Inc. provides credit and debit card, payroll and

related processing services to restaurant, hotel and retail merchants throughout the United States,

and indicates on its website that it provides services to over 137,000 merchants. In 2003,

Heartland broadly disseminated a pamphlet containing the following statement:

> Your credit card terminal is now -- or will soon be required by law
> or the bankcard associations to truncate -- or limit -- the information
> that can appear on electronically printed sales receipts.

> What that means is that on all cardholder numbers:

> • All but the last four numbers of the card number must be obscured . . . .

46.    In 2006, Heartland broadly disseminated a second pamphlet including the following statement:

> **Make every transaction a safe one. \*\*\*\***
>
> • The cardholder's receipt . . . ***should only include*** the last 4 or 5 digits of the card number. **\*\*\*\***

47.    Commerce Bank, another credit card processor, sent "Merchant Compliance Awareness" notices to its customers during 2004. Those notices stated that all but the last four digits of the cardholder's account number must be suppressed from and not displayed on the receipt.

48.    Many restaurant and retail trade associations notified their merchant members of FACTA's truncation requirements, mirroring Visa's truncation requirements. For example, in its February/March 2005 Newsletter, the Virginia Retail Merchants Association reported that "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number . . . ."

49.    In the April 23, 2003 edition of the monthly magazine for the National Association of Convenience Stores, an article titled "Visa USA Targets Identity Theft," appeared which included the following statement:

> [A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. . . . Feinstein has introduced legislation to combat identity theft.

50.    The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council,

9

included an article regarding FACTA's truncation requirements and including the following

language:

> [A]ccording to the FACTA Act, no person that accepts credit cards
> or debit cards for the transaction of business shall print more than
> the last 5 digits of the card number . . . upon any receipt provided
> to the cardholder at the point of sale or transaction . . . .

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the

National Association of Convenience Stores.

    51.    In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter

included an article regarding Requirements for Credit Card Truncation stating:

> [T]here is currently no Connecticut state law, so the two ruling
> requirements come from VISA and a new Federal Fair Credit
> Reporting Act signed in December 2003.
>
> Truncation requires that all but the last four digits of the cardholder
> account number . . . be suppressed on the cardholder copy of the
> transaction receipt generated from all electronic terminals . . . .

    52.    After FACTA's enactment, the Wisconsin Restaurant Association issued a

"Credit Card Transaction" Alert to its members, which stated:

> You may have been hearing about credit card truncation lately.
> This is what you need to know.
>
> Credit card truncation removes all but the last four (or five) digits
> of a credit card account number . . . from the sales receipt. For
> example: A non-truncated receipt would list:
>
>     Acct. # 1234 5678 7654 3210 Exp. 10/05
>
> while a truncated receipt would show:
>
>     Acct. #: **** **** **** 3210 Exp ****
>
> The federal Fair and Accurate Credit Transaction Act of 2003,
> prohibits any person that accepts credit cards or debit cards from
> printing . . . more than the last five digits of the card number upon

10

> any terminal-generated receipt provided to the cardholder at the
> point of sale . . . .

53.     An article appeared in the January 2005 edition of the Massachusetts Restaurant

Association Newsletter notifying Association members that both Visa and MasterCard require

truncation of . . . all but the last four digits of the cardholder account number.

54.     Similar information was disseminated by the Ohio Restaurant Association, the

Oklahoma Restaurant Association, and a significant number of other restaurant trade

associations, and retail merchant trade associations.

55.     An article was published in the March/April 2006 Edition of the Ohio

Independent Automobile Dealers' Association Dealer News Magazine entitled, "What You

Should Know About Credit and Debit Card Procession and the FACTAs about Card

Truncation." The article states:

> What is Card Truncation?  This federal law sets deadlines by
> which the receipt electronically printed from a credit card sale
> must be truncated—meaning, the receipt given to the customer
> shows no more than the last five digits of the customer's credit
> card number . . . .
>
> Business owners are responsible for merchant account compliance
> with the truncation regulations and must make sure their printed
> cardholder receipts do not contain . . . or full account numbers.

This same article appeared in the March/April edition of the West Coast Independent

Automobile Dealer News.

56.     The Independent Insurance Agents & Brokers of America circulated a report to its

members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, the Fair and

Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." In relevant part, this

publication stated:

11

> Under the FACTA Act, businesses and others accepting credit or
> debit cards for payment may not print more than the last five digits
> of the card number . . . upon any receipt provided to the cardholder
> at the point of sale.

57.    The November 18, 2004 edition of the Compliance Challenge, published by the

Credit Union National Association News, stated, "FACTA prohibits anyone that accepts

credit/debit cards to print more than the last 5 digits of the card number . . . on any receipt at the

point of sale or transaction . . . ."

58.    Truncation standards, including the standards reflected in the Visa Merchant

Rules and in FACTA, permit the publication of the last four or five digits of customer account

numbers on the receipt presented to customers at the point of sale. The publication of this

minimal amount of account information is sufficient to facilitate merchant account

reconciliation, processing of returns, etc. In isolation, the publication of *only* the last four or five

digits of a customer account number significantly limits the extent to which a potential identity

thief can effectively use customer receipts disseminated at the point of sale to facilitate identity

theft.

59.    Publishing or making known . . . with the last four or five digits of the customer's

account number, exponentially increases the possibility of identity theft, which is the palpable

reason that Visa, and then Congress, required the truncation of expiration dates.

60.    Credit and debit card account numbers are not randomly generated. Instead,

account numbers reflect an internal coding scheme set forth by the International Organization for

Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips.

Consistent with this standard, every credit card number consists of the following: (a) a single

digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) a number

unique to the card; and (d) a check digit.

12

61.    The MII identifies the industry of the issuer of the card.

62.    The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

63.    The seventh through next to the last digits, up to a maximum of 12 digits, are the numbers unique to the card.

64.    The last digit is a "check digit" that is not randomly assigned, but instead calculated by a defined algorithm. Therefore, the "check digit" is derivative of the other numbers in the credit card number.

65.    Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

66.    An identity thief who acquires a receipt containing the last four or five digits of a credit card number . . . can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential information.

67.    The FTC issued rules governing interpretation of the statute, including:

> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number . . . . For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:

ACCT: ***********12345

See Bureau of Consumer Protection, Federal Trade Commission, *Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007).

13

68.    The cost of truncating credit and debit account numbers is minimal.

69.    Most of Defendants' business peers and competitors brought their credit and debit card receipt printing processes into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendants could have done the same.

70.    FACTA creates a statutory right of privacy.

71.    Defendants made known to its staff and possibly others Plaintiff's private credit card information, violating Plaintiff's right of privacy. Stated differently, by publishing Plaintiff's private credit card information to Defendants' staff and possibly others, Defendants violated Plaintiff's right of privacy. Defendants similarly violated the privacy rights of the other class members.

72.    Defendants recklessly disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA. 15 U.S.C. § 1681n.

73.    Therefore, Defendants are liable to Plaintiff and the other class members for, among other things, "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(A).

WHEREFORE, Plaintiff, JEFFREY A. KUBAS, demands judgment in favor of Plaintiff and the other class members and against Defendants as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    For statutory damages of $100 to $1000 per violation;

14

C.      For attorney's fees, litigation expenses, and costs; and

D.      For such other and further relief as the Court may deem proper, including punitive

damages if appropriate.

JEFFREY A. KUBAS, individually and on behalf
of all others similarly situated,

By:      s/Brian J. Wanca
         One of his attorneys

Brian J. Wanca                          Phillip A. Bock
ANDERSON + WANCA                        BOCK & HATCH, LLC
3701 Algonquin Road, Suite 760          134 N. LaSalle Street, Suite 1000
Rolling Meadows, IL  60008              Chicago, IL  60602
Telephone:  847/368-1500                Telephone:  312/658-5500

15

# EXHIBIT B

1 of 1 DOCUMENT

UNITED STATES PUBLIC LAWS
110th Congress 2nd Session
(c) 2008, LEXIS-NEXIS, A DIVISION OF REED ELSEVIER INC. AND REED ELSEVIER PROPERTIES INC.

PUBLIC LAW 110-241 [H.R. 4008]
JUN. 03, 2008
CREDIT AND DEBIT CARD RECEIPT CLARIFICATION ACT OF 2007

*110 P.L. 241; 122 Stat. 1565; 2008 Enacted H.R. 4008; 110 Enacted H.R. 4008*

BILL TRACKING REPORT:        110 Bill Tracking H.R. 4008
FULL TEXT VERSION(S) OF BILL: 110 H.R. 4008

An Act

To amend the Fair Credit Reporting Act to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

[*1] SECTION 1. SHORT TITLE.

This Act may be cited as the "Credit and Debit Card Receipt Clarification Act of 2007".

[*2] SEC. 2. FINDINGS; PURPOSE.

(a) Findings.--The Congress finds as follows:

(1) The Fair and Accurate Credit Transactions Act (commonly referred to as "FACTA" ) was enacted into law in 2003 and 1 of the purposes of such Act is to prevent criminals from obtaining access to consumers' private financial and credit information in order to reduce identity theft and credit card fraud.

(2) As part of that law, the Congress enacted a requirement, through an amendment to the Fair Credit Reporting Act, that no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the card holder at the point of the sale or transaction.

(3) Many merchants understood that this requirement would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of the law.

(4) Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated.

(5) None of these lawsuits contained an allegation of harm to any consumer's identity.

(6) Experts in the field agree that proper truncation of the card number, by itself as required by the amendment made by the Fair and Accurate Credit Transactions Act, regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.

(7) Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit.

110 P.L. 241, *; 122 Stat. 1565;
2008 Enacted H.R. 4008; 110 Enacted H.R. 4008

(b) Purpose.--The purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers.

  [*3]  SEC. 3. CLARIFICATION OF WILLFUL NONCOMPLIANCE FOR ACTIONS BEFORE THE DATE OF THE ENACTMENT OF THIS ACT.

(a) In General.--Section 616 of the Fair Credit Reporting Act (*15 U.S.C. 1681n*) is amended by adding at the end the following new subsection:

"(d) Clarification of Willful Noncompliance.--For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt.".

(b) Scope of Application.--The amendment made by subsection (a) shall apply to any action, other than an action which has become final, that is brought for a violation of 605(g) of the Fair Credit Reporting Act to which such amendment applies without regard to whether such action is brought before or after the date of the enactment of this Act.

Speaker of the House of Representatives.
Vice President of the United States and President of the Senate.